**Diane BOWIE, Plaintiff,**

v.

**VETERANS' ADMINISTRATION, et al., Defendants.**

**No. 82 C 7059.**

United States District Court, N.D. Illinois, E.D.

June 9, 1983.

Peter J. Schmiedel, Chicago, Ill., for plaintiff.

Dan K. Webb, U.S. Atty., Mary S. Rigdon, Asst. U.S. Atty., Chicago, Ill., Paul Blankenstein, Barbara Ward, Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Diane Bowie ("Bowie"), a black female employee of the Veterans' Administration ("VA"), originally sued VA and VA Director Robert P. Nimmo[1] under the federal governmental provision of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e–16. Bowie's Complaint charges VA's failure to select her for the position of Computer Programmer Trainee was discriminatory. VA now moves under Fed.R.Civ.P. ("Rule") 12(b)(6) to dismiss certain portions of the Complaint. For the reasons stated in this memorandum opinion and order, VA's motion is denied.

### Complaint Allegations[2]

In 1978 Bowie was employed as a computer technician at VA's Hines, Illinois Data Processing Center (the "Center"). In May 1978 VA announced the availability of approximately 26 Computer Programmer Trainee positions at the Center. VA fielded applications from its own Center employees as well as from outside individuals.

Of the 94 VA employee-applicants, 41 (or 44%) were black. To recruit non-VA applicants, VA obtained from the then Civil Service Commission (the "Commission")[3] a list of "eligibles" who had passed the Commission's Professional and Administrative Career Examination ("PACE"). VA considered 19 persons from that list, all of whom were white.

VA evaluated its internal applicants on a numerical scale applied to five criteria: (1) education; (2) experience; (3) performance evaluation; (4) self-development and training; and (5) Computer Specialist Aptitude

---

1. Though the parties have not raised the issue, only Harry Walters (who has now succeeded Nimmo as VA Director) is the proper defendant under 42 U.S.C. § 2000e–16(c), so VA itself is entitled to dismissal. Nonetheless, solely for editorial convenience, defendants will be referred to in the singular as "VA."

2. As always, the Complaint's well-pleaded allegations must be accepted as true for Rule 12(b)(6) purposes. Of course no findings are made or implied by this opinion.

3. Office of Personnel Management ("OPM") is now the Commission's successor.

Test ("710 Test") score.[4] It then classified those applicants as "highly qualified," "qualified" and (presumably, though the parties' submissions do not identify such a category) "not qualified." Bowie was placed in the "qualified" category. By contrast, the non-VA applicants were appraised solely on the basis of their PACE scores. After completing its review process, VA selected all 19 outside candidates and 7 VA employees (only one of whom was black) ranked as "highly qualified."

Thus Bowie, though "qualified," was not among the chosen few. Her non-selection was attributable to the discriminatory nature of two components of the assessment process: (1) testing (both the 710 Test and PACE) and (2) subjective criteria in the candidate's performance evaluation. As for the tests, they implicated Title VII's antidiscrimination mandate because:

1. Blacks scored significantly lower than whites (Complaint ¶ 20).

2. Test results were neither "predictive of [nor] significantly correlated with" an individual's capability as a Computer Programmer Trainee (Complaint ¶ 19).[5]

Bowie filed a timely discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). After investigating Bowie's allegations, Chicago's EEOC office concluded (Bowie Mem. Ex. A at 10):

> In light of the above evidence—an internal selection procedure that operates disparately against Blacks and has not been properly validated, and substantial use of an outside procedure which selected only

whites—we recommend a finding of discrimination.

VA appealed from that decision to the Commission and then to VA's General Counsel in Washington, D.C. Because VA failed to take final action within 180 days of the filing of her EEOC complaint, Bowie brought this suit pursuant to 42 U.S.C. § 2000e–16(c).

### Motion To Dismiss

 VA seeks to dismiss the portions of the Complaint dealing with PACE and Bowie's job performance appraisal. Both aspects of the Complaint withstand Rule 12(b)(6) onslaught.

As for the former, VA contends Bowie lacks standing because she was not injured by VA's use of PACE. It says:

1. VA used PACE only to determine which non-VA employees should be part of the applicant pool.

2. Bowie was not required to take PACE to be considered for the computer trainee position.

Not so. Viewed in the light most favorable to Bowie, the Complaint asserts VA used PACE not only to select the group of outside candidates but also to evaluate their individual qualifications for the post. If in fact discriminatory (as this Court must assume), PACE would have conveyed an inflated view of the capabilities of those white candidates—to the detriment of a black internal applicant such as Bowie. Indeed VA's use of PACE would result in a distorted comparison of the two applicant groups even were 710 Test nondiscriminatory.[6] Accordingly Bowie has alleged the

---

4. That latter test was specifically developed to assist federal agencies in filling computer trainee positions.

5. VA's use of those tests also allegedly violated the federal government's Executive Agency Guidelines on Employee Selection Procedures (29 C.F.R. § 1607)—guidelines on which courts rely heavily in determining whether an agency's selection procedures comport with Title VII. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34 & n. 9, 91 S.Ct. 849, 854–55 & n. 9, 28 L.Ed.2d 158 (1971).

6. Had VA ranked the external applicants lower on the scale (as the result of eliminating PACE's bias), arguably it might have hired internal applicants like Bowie who gained enough points to be rated "qualified." If on the other hand VA were precluded from accepting merely "qualified" applicants under any circumstances, its contention Bowie was unharmed by its use of PACE would be persuasive. However that factual issue cannot be resolved at this threshold pleading stage.

requisite injury to challenge VA's resort to PACE.[7]

■ As for its discriminatory performance evaluation of Bowie, VA contends she failed to exhaust her administrative remedies by not including such an assertion in her EEOC charge. That argument cannot prevail in light of the language of the charge, coupled with the liberal standards for customary EEOC complaints. As our own Court of Appeals declared in *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 538 F.2d 164, 167 (7th Cir.1976) (quoting *Danner v. Phillips Petroleum Co.,* 447 F.2d 159, 162 (5th Cir.1971)):

> The correct rule to follow in construing EEOC charges for purposes of delineating the proper scope of a subsequent judicial inquiry is that "the complaint in the civil action . . . . may properly encompass any . . . . discrimination like or reasonably related to the allegations of the charge and growing out of such allegations."

Though Bowie's EEOC charge did not in terms identify her performance evaluation, it did refer to the assertedly discriminatory way in which "the Agency's promotion policy and selection policy was implemented." Performance evaluation was one component of the accused policy. Consequently Bowie's discriminatory job appraisal allegation meets the "reasonably related" *Jenkins* test.

■ VA also challenges that allegation as untimely because the performance appraisal was given in December 1977, after which Bowie did not complain promptly to an EEO counselor (29 C.F.R. § 1613.124 requires resort to counseling within 30 days of a discriminatory event). But on Bowie's allegations (again viewed in the light most favorable to her) the discriminatory event occurred not when the appraisal was rendered but when it was later *used* to deny

her selection as a trainee. For the present, at least, that forecloses any argument of a time bar.

### Conclusion

VA's motion to dismiss is denied.

---

7. Neither *League of United Latin American Citizens v. Hampton,* 501 F.2d 843, 844–45 (D.C. Cir.1974) nor *Barrett v. United States Civil Service Commission,* 69 F.R.D. 544, 548–49 (D.D. C.1975) affects this conclusion. Unlike Bowie, plaintiffs in *Hampton* and *Barrett* challenged tests they (and all other job aspirants) were required to take as a prerequisite *to eligibility* for employment. Those plaintiffs were found to lack standing because they had never taken the exams and consequently had never been in contention for the positions involved. Such unremarkable holdings in no way implicate Bowie's standing, for she took the only test VA required as a precondition to her being considered for the trainee opening.